# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ANNIE MILES,

     Plaintiff,

vs.                                                                CASE NO.:

CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC
d/b/a Craft Body Scan,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANNIE MILES, (hereinafter "Plaintiff" or "Ms. Miles"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan (hereinafter "Defendant," or "Craft Health") and alleges:

## INTRODUCTION

1.      The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race and national origin as well as retaliation in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; and Chapter 760 of the

Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). Plaintiff also brings this action for breach of contract for Defendant's failure to honor the agreed upon pay increase as set forth in her employment agreement.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race and national origin, and retaliated against her in violation of her rights under Title VII and the FCRA. Plaintiff further alleges that Defendant breached her employment contract by refusing to provide the contractually agreed upon pay increase after her successful completion of the 90-day probationary period.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.     Plaintiff is a 55-year-old African American female born in Brooklyn, New York, and is a naturalized United States citizen.

3

9.     Plaintiff is a member of a class protected against discrimination and retaliation based on her race and national origin under Title VII and the FCRA.

10.    During the period from February 14, 2023, until May 26, 2023, Defendant employed Plaintiff as Office Administrator/Back Office Administrator.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII and the FCRA.

13.    The Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, is a Limited Liability Company with a principal place of business located at 5711 E 71st St 100, Tulsa, OK 74136, and operates under various trade names including Craft Health, Craft Body Scan, Advanced Body Scan, and Craft Health Group Body Scan.

14.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, operating a medical diagnostic imaging center at 5332 Avion Park Drive,

Suite #100, Tampa, FL 33607, and has multi-state operations in Florida, Kentucky, North Carolina, and Oklahoma with twenty-five (25) or more employees.

15.　At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII and the FCRA.

16.　Accordingly, Defendant is liable under Title VII and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.　Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.　On June 28, 2023, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race and national origin discrimination as well as retaliation.

19.　On June 20, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2023-02918) against Defendant.

20.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    On February 14, 2023, Plaintiff began her employment with Defendant as Office Administrator/Back Office Administrator at Defendant's Tampa, Florida location at 5332 Avion Park Drive, Suite #100, Tampa, FL 33607.

23.    Plaintiff was hired at $20.00 per hour for full-time employment, paid bi-weekly as a W2 hourly employee. Plaintiff reported directly to Jim Nelson, Director/Manager, who is Caucasian.

24.    Pursuant to the offer letter signed on February 16, 2023, by Plaintiff and Trey Marler, President of Defendant, Plaintiff's employment included a contractual provision stating: "The first 90-days will be a

probationary employment with an evaluation at the conclusion for continued employment and increased compensation to $21.50 per hour."

25.    At the time of her hire, Plaintiff was a 54-year-old African American female and the only African American female employee in her age group at Defendant's Tampa location. All other employees and management were Caucasian.

26.    Plaintiff's job duties included running the office, processing contracts for consultants, completing management reports for daily revenues, updating tradeshow reports, managing front desk staff, accepting payments, answering phones, making outgoing calls to set appointments, problem-solving office issues during her manager's absence, and serving as a support system for her supervisor.

27.    Plaintiff worked 40+ hours per week, regularly worked overtime, and often skipped lunch breaks to complete her duties. Plaintiff was told she was "supposed to be part of management" and was expected to respond to work communications outside scheduled hours despite her hourly employment status.

28.    Immediately upon Plaintiff's hire, Nataly Velez, a Caucasian/Hispanic/Latino front desk employee who reported to Plaintiff,

told Plaintiff "she wanted my job" and informed Plaintiff's supervisor and the COO of her intent to take Plaintiff's position.

29.    Velez made it clear that she did not want to be supervised by a Black woman and did not want to collaborate directly with a Black woman. Velez exhibited a lackadaisical attitude and an utter lack of attention to detail in her job performance.

30.    Mike Wernli, the COO based in Tulsa, Oklahoma, who is Caucasian, subjected Plaintiff to derogatory remarks and offensive stereotypes regarding her race and would make ignorant comments about her cultural traditions.

31.    Plaintiff was referred to as "little black lady" by individuals at Defendant due to her height and race, which created a demeaning and hostile work environment.

32.    When Plaintiff reported Velez's poor performance to Jim Nelson, Leah Spears (Back Office Administration Manager), and Mike Wernli with specific details and documentation, the office environment became hostile with subtle but unmistakable bias that spread to other coworkers.

33.    After Plaintiff reported performance issues and requested support from management, conversations would abruptly stop when

Plaintiff entered rooms, and curious glances were cast in her direction, causing Plaintiff to feel isolated and eroding her self-confidence.

34.    During her employment, Plaintiff traveled to various locations including Raleigh, North Carolina from March 2, 2023 to March 6, 2023, Nashville, Tennessee, and Tulsa, Oklahoma for business purposes.

35.    Initially, Mike Wernli told Plaintiff to document any issues with Velez, but after Plaintiff provided the requested documentation and reported the performance problems, Wernli began to retaliate against Plaintiff.

36.    As retaliation for reporting discrimination and performance issues, Plaintiff was removed from the Employee Engagement Committee without proper explanation, despite being told she was part of management.

37.    Plaintiff was excluded from management meetings and removed from need-to-know business information that affected her ability to perform her job duties effectively.

38.    Mike Wernli stopped returning Plaintiff's calls and emails, and Plaintiff was not properly notified of meeting schedules and office itinerary changes, further isolating her from the management team.

39.    During one interaction, Mike Wernli used profanity toward Plaintiff, stating "bullshit, there is nothing wrong with you, stop playing the victim, I don't have time for this," demonstrating a pattern of hostile and discriminatory treatment.

40.    Jim Nelson confirmed to Plaintiff that it was "regular practice for Mike Wernli to force employees to accept their terms or resign" and mentioned a specific employee named "Kaveh" who experienced similar treatment.

41.    Despite the discriminatory treatment, Jim Nelson told Plaintiff that he had "no issues with my work or work ethic and wants me to stay." Nelson confirmed "several times on multiple occasions how he was satisfied with my work and didn't want me to leave" and told Plaintiff she was "an asset to the company."

42.    Company President Trey Marler sent Plaintiff an email stating "Thank you for doing a great job. That's what we're looking for" after Plaintiff successfully resolved a customer complaint.

43.    A patient commented that "Annie Miles is an asset to your company," demonstrating Plaintiff's competent performance in her role.

44.    Plaintiff's 90-day probationary period concluded on May 14, 2023, and Jim Nelson recommended the contractually promised pay increase of $1.50 per hour on Plaintiff's behalf.

45.    Despite Plaintiff's satisfactory performance and her supervisor's recommendation, Defendant refused to honor the contractually agreed upon pay increase from $20.00 to $21.50 per hour.

46.    On May 24, 2023, Defendant prepared a second offer letter for continued employment without the contractual pay increase, requiring an additional 90-day review period from May 25 through August 24, 2023.

47.    Defendant's May 24, 2023, review stated that Plaintiff "performed satisfactorily enough for continued employment" but claimed her "total performance during the first 90 days was not satisfactory to receive a 7.5% increase."

48.    The alleged performance deficiencies cited by Defendant included time management, collaboration, and interaction with co-workers and customers, which Plaintiff contends were pretextual and motivated by discriminatory animus.

49.    On May 25, 2023, Plaintiff refused to sign the second offer letter and clarified that her refusal was not a resignation but a request for Defendant to honor the original contract terms.

50.    Plaintiff explicitly stated to Defendant: "If Craft Health refuses to honor their agreement, I will look at this as a breach of contract."

51.    On May 26, 2023, Plaintiff asked Jim Nelson for an update on the pay increase situation, and he responded that he was told "business as usual."

52.    Plaintiff clarified that without the contractually promised pay increase, "It is not business as usual for me."

53.    On May 26, 2023, Ryan Fox, HR Director, called Plaintiff with Jim Nelson present on speaker and stated that "due to my refusal to accept the option to continue to work without the increase they were terminating my employment effective immediately."

54.    Plaintiff's employment was terminated on May 26, 2023, in direct retaliation for her refusal to accept Defendant's breach of her employment contract and her complaints about discriminatory treatment.

55.    Following her termination, Plaintiff returned her badge and office keys, confirmed the $188.00 balance in the petty cash box, and left the building.

56.    As a direct result of Defendant's discriminatory conduct, hostile work environment, retaliation, and breach of contract, Plaintiff has suffered significant economic and emotional damages including loss of wages, benefits, and future earning capacity.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Race Discrimination

57.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58.    Plaintiff is a 55-year-old African American female.

59.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

60.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political

subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

61.     Plaintiff was the only African American female employee in her age group at Defendant's Tampa location, with all other employees and management being Caucasian.

62.     Plaintiff was subjected to discrimination because of her race by Defendant's employees, including but not limited to Nataly Velez, who made it clear that she did not want to be supervised by a Black woman and did not want to collaborate directly with a Black woman.

63.     Mike Wernli, Defendant's COO, subjected Plaintiff to derogatory remarks and offensive stereotypes regarding her race and made ignorant comments about her cultural traditions.

64.     Plaintiff was referred to as "little black lady" by individuals at Defendant due to her height and race, creating a demeaning and hostile work environment.

65.     When Plaintiff reported performance issues regarding Velez, the office environment became hostile with subtle but unmistakable bias that

spread to other coworkers, causing conversations to abruptly stop when Plaintiff entered rooms and curious glances to be cast in her direction.

66.    Defendant knew or should have known of the discrimination suffered by Plaintiff based on her race.

67.    Despite Plaintiff's satisfactory performance and her supervisor's recommendation for the contractually promised pay increase, Defendant refused to honor the agreed-upon compensation increase, treating Plaintiff less favorably than similarly situated employees of different races would have been treated.

68.    Defendant violated Title VII by subjecting Plaintiff to discrimination because of her race by failing to promptly correct the discriminatory behavior of its employees and by ultimately terminating Plaintiff's employment when she refused to accept the breach of her employment contract.

69.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

70.    Defendant's actions constitute discrimination in violation of Title VII.

71.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her race;

B.      Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.      Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.      Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### National Origin Discrimination

72.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

73.    Plaintiff is a naturalized United States citizen born in Brooklyn, New York.

74.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

75.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts,

unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

76.    Plaintiff was subjected to discrimination because of her national origin by Defendant's employees, including Mike Wernli, who made ignorant comments about her cultural traditions and subjected her to offensive stereotypes.

77.    The discriminatory treatment Plaintiff received was based, in part, on her national origin and cultural background.

78.    Defendant knew or should have known of the discrimination suffered by Plaintiff based on her national origin.

79.    Despite Plaintiff's satisfactory performance and her supervisor's recommendation for the contractually promised pay increase, Defendant refused to honor the agreed-upon compensation increase, treating Plaintiff less favorably than similarly situated employees of different national origins would have been treated.

80.    Defendant violated Title VII by subjecting Plaintiff to discrimination because of her national origin by failing to promptly correct the discriminatory behavior of its employees and by ultimately terminating

Plaintiff's employment when she refused to accept the breach of her employment contract.

81.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

82.    Defendant's actions constitute discrimination in violation of Title VII.

83.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant,

CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her national origin;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.      Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

84.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

85.     Plaintiff is a member of a protected class under Title VII based on her race and national origin.

86.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

87.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

88.    Plaintiff engaged in protected activity under Title VII by reporting discrimination and performance issues related to Nataly Velez's discriminatory conduct and poor performance to her supervisors, including Jim Nelson, Leah Spears, and Mike Wernli.

89.    Plaintiff complained about the discriminatory treatment she was receiving based on her race and national origin, including Velez's refusal to be supervised by a Black woman and Wernli's derogatory remarks about her race and cultural traditions.

90.    After Plaintiff reported the discrimination and performance issues, Defendant subjected her to adverse employment actions and retaliation, including but not limited to:

a.    Creating a hostile work environment with subtle but unmistakable bias that spread to other coworkers;

b.    Removing Plaintiff from the Employee Engagement Committee without proper explanation;

c.    Excluding Plaintiff from management meetings despite being told she was part of management;

d.    Removing Plaintiff from need-to-know business information that affected her job performance;

e.    Having Mike Wernli stop returning her calls and emails;

f.    Failing to properly notify Plaintiff of meeting schedules and office itinerary changes;

g.    Subjecting Plaintiff to hostile and profane treatment by Mike Wernli; and

h.    Ultimately terminating Plaintiff's employment.

91.    Defendant knew that Plaintiff had engaged in protected activity by reporting discrimination and performance issues.

92.    A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her, as the retaliation

began immediately after Plaintiff reported the discrimination and performance issues.

93.    Defendant's actions were materially adverse and would dissuade a reasonable employee from engaging in protected activity.

94.    Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity under Title VII.

95.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent retaliation against Plaintiff, deprived her of statutory rights under Title VII.

96.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for engaging in protected activity;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by

Defendant's retaliatory conduct and actions pursuant to Title VII;

D.     Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT**
**FLORIDA STATUTES §§ 760.01-11**
**Race Discrimination**

97.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

98.    Plaintiff is a 55-year-old African American female.

99.    Plaintiff is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her race.

100.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

101.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

102.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

103.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's race.

104.    As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and

other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

105. Defendant violated the FCRA by subjecting Plaintiff to discrimination because of her race by failing to promptly correct the discriminatory behavior of its employees, including Nataly Velez's refusal to be supervised by a Black woman and Mike Wernli's derogatory remarks about her race and cultural traditions.

106. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, and privileges of her employment with Defendant.

107. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived her of statutory rights under the FCRA.

108. Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race.

109.    Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the FCRA.

110.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA, discriminating against Plaintiff based on her race;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.  Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to the FCRA;

D.  Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.  Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT,
## FLORIDA STATUTES §§ 760.01-11
## National Origin Discrimination

111.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

112.  Plaintiff is a naturalized United States citizen born in Brooklyn, New York.

113.  Plaintiff is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her national origin.

114.  At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

115.  Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock

company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

116.   At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

117.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's national origin.

118.   As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

119.   Defendant violated the FCRA by subjecting Plaintiff to discrimination because of her national origin by failing to promptly correct the discriminatory behavior of its employees, including Mike Wernli's ignorant comments about her cultural traditions and offensive stereotypes.

120.   Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, and privileges of her employment with Defendant.

121.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived her of statutory rights under the FCRA.

122.   Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to national origin.

123.   Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the FCRA.

124.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the

capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE,** the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA, discriminating against Plaintiff based on her national origin;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to the FCRA;

D.   Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.   Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VI
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## FLORIDA STATUTES §§ 760.01-11
## Retaliation

125.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

126.   Plaintiff is a member of a protected class under the FCRA based on her race and national origin.

127.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

128.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

129.   At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

130. Plaintiff engaged in protected activity under the FCRA by reporting discrimination and performance issues related to Nataly Velez's discriminatory conduct and poor performance to her supervisors, including Jim Nelson, Leah Spears, and Mike Wernli.

131. Plaintiff complained about the discriminatory treatment she was receiving based on her race and national origin, including Velez's refusal to be supervised by a Black woman and Wernli's derogatory remarks about her race and cultural traditions.

132. After Plaintiff reported the discrimination and performance issues, Defendant subjected her to adverse employment actions and retaliation, including but not limited to:

    a.    Creating a hostile work environment with subtle but unmistakable bias that spread to other coworkers;

    b.    Removing Plaintiff from the Employee Engagement Committee without proper explanation;

    c.    Excluding Plaintiff from management meetings despite being told she was part of management;

    d.    Removing Plaintiff from need-to-know business information that affected her job performance;

e.   Having Mike Wernli stop returning her calls and emails;

f.   Failing to properly notify Plaintiff of meeting schedules and office itinerary changes;

g.   Subjecting Plaintiff to hostile and profane treatment by Mike Wernli; and

h.   Ultimately terminating Plaintiff's employment.

133.   Defendant knew that Plaintiff had engaged in protected activity by reporting discrimination and performance issues.

134.   A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her, as the retaliation began immediately after Plaintiff reported the discrimination and performance issues.

135.   Defendant's actions were materially adverse and would dissuade a reasonable employee from engaging in protected activity.

136.   Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity under the FCRA.

137.   The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise

reasonable care to prevent retaliation against Plaintiff, deprived her of statutory rights under the FCRA.

138.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE,** the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.  Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to the FCRA;

D.  Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.  Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.  Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.   Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VII
## BREACH OF CONTRACT

139.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

140.   On February 16, 2023, Plaintiff and Defendant entered into a written employment agreement whereby Defendant offered Plaintiff employment as Office Administrator/Back Office Administrator at $20.00 per hour for full-time employment.

141.   The employment agreement contained a specific provision stating: "The first 90-days will be a probationary employment with an evaluation at the conclusion for continued employment and increased compensation to $21.50 per hour."

142.   The employment agreement was signed by Plaintiff on February 16, 2023, and by Trey Marler, President of Defendant, creating a binding contract between the parties.

143.   Plaintiff performed all conditions precedent to Defendant's obligation to provide the pay increase, including but not limited to:

    a.    Successfully completing the 90-day probationary period which ended on May 14, 2023;

    b.    Performing her job duties satisfactorily as confirmed by her supervisor Jim Nelson;

    c.    Receiving positive feedback from management and customers; and

    d.    Receiving a recommendation from her supervisor for the contractual pay increase.

144.   Defendant's own May 24, 2023 review acknowledged that Plaintiff "performed satisfactorily enough for continued employment."

145.   Despite Plaintiff's satisfactory performance and fulfillment of all contractual requirements, Defendant breached the employment agreement by refusing to provide the promised pay increase from $20.00 to $21.50 per hour.

146.   Instead of honoring the original contract terms, Defendant attempted to unilaterally modify the agreement by requiring Plaintiff to sign

a new offer letter without the promised pay increase and with an additional 90-day review period.

147.    Defendant's refusal to honor the agreed-upon pay increase constitutes a material breach of the employment contract.

148.    Plaintiff was ready, willing, and able to continue her employment with Defendant pursuant to the original contract terms, including the $21.50 per hour compensation after the probationary period.

149.    Plaintiff explicitly notified Defendant that she considered their refusal to honor the pay increase as a breach of contract.

150.    When Defendant terminated Plaintiff's employment on May 26, 2023, for refusing to accept the breach of her contract, Defendant further breached the employment agreement.

151.    As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages including but not limited to:

> a.    Loss of the $1.50 per hour pay increase ($3,120 annually based on 40 hours per week);
>
> b.    Loss of wages from May 26, 2023 through the present;

      c.     Loss of benefits including health insurance, PTO, and bonus potential;

      d.     Loss of future earning capacity; and

      e.     Other incidental and consequential damages.

152. Defendant's breach of contract was willful and in bad faith, entitling Plaintiff to all available remedies under Florida law.

**WHEREFORE,** the Plaintiff, ANNIE MILES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CRAFT HEALTH MANAGEMENT OF FLORIDA, LLC d/b/a Craft Body Scan, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

    A.     Grant judgment in favor of Plaintiff and declare that Defendant has breached the employment contract;

    B.     Award Plaintiff compensatory damages in an amount sufficient to make her whole for the breach of contract, including but not limited to the lost pay increase and all consequential damages;

    C.     Award Plaintiff incidental and consequential damages proximately caused by Defendant's breach of contract;

D.   Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

E.   Award Plaintiff her attorneys' fees and costs of this action to the

extent permitted by law; and

F.   Grant such other and further relief as this Court may deem

equitable, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Dates this 5th day of September 2025.

*/s/ Jason W. Imler, Esq*
**Jason W. Imler**
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
Telephone (813) 553-7709
Jason@imlerlaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
*Attorney for Plaintiff*